# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 18, 2004 Session

## STATE OF TENNESSEE v. RANDY PRUITT and ANET AMERICA

### Direct Appeal from the Criminal Court for Cocke County
### Nos. 8929, 9129     Rex Henry Ogle, Judge

---

### No. E2004-00891-CCA-R3-CD - Filed October 18, 2004

---

The defendants, who are brother and sister, were each convicted by a Cocke County jury of assault, a Class A misdemeanor, and sentenced by the trial court to serve 11 months, 29 days on supervised probation. Both defendants challenge the sufficiency of the evidence on appeal. We conclude that sufficient evidence was presented from which a rational trier of fact could reasonably find both defendants guilty of assault. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

P. Richard Talley, Dandridge, Tennessee, for the appellants, Randy Pruitt and Anet America.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

This case arose out of a fight between next-door neighbors. The husband and wife victims, Johnny and Joanne Shelton, and the defendants' parents, Wade and Edith Pruitt, were involved over the years in a series of boundary line disputes that led to increasingly hostile relations between their families. On the afternoon of July 28, 2002, a physical altercation began between Joanne Shelton and Anet America[1] and quickly escalated into a general brawl in which several members of the

---

[1] Consistent with the practice of this court, we refer to this defendant by the name used in the indictment. We note, however, that the defendant's medical bills and certain pleadings filed by her defense counsel refer to her as

(continued...)

Shelton and Pruitt families, as well as one or two other neighbors, took part. The Sheltons swore out warrants against the Pruitts, and Wade and Edith Pruitt, Randy Pruitt, and Anet America were subsequently charged, variously, with assaulting Mr. and Mrs. Shelton and their daughter, Kimberly Shelton. Following a joint trial, the jury acquitted the elder Pruitts of all charges; acquitted Randy Pruitt of the assault of Joanne Shelton; convicted Randy Pruitt of the assault of Johnny Shelton; acquitted Anet America of the assault of Kimberly Shelton; and convicted Anet America of the assault of Joanne Shelton.

At the defendants' trial, Johnny Shelton testified he had lived at 145 Brookfield Drive for approximately thirty-five years. He said he and his next-door neighbor, Wade Pruitt, had had "some words" years ago over Mr. Pruitt's encroachment on his property with a sewer line and a fence, and had engaged in a series of boundary line disputes since that time. Mr. Shelton said the Pruitts erected a fence as tall as his house, "started beating and banging up [his] car and stuff," and continually harassed his family by "dragging [them] in and out of court" with false claims that they had vandalized his fence and property. As a result, he installed a surveillance camera outside his home directed toward the Pruitts' property.

Mr. Shelton testified he was in his backyard on the afternoon of July 28, 2002, cleaning his swimming pool liner that had been stained by some beans the Pruitts had thrown over the fence, when he heard his wife scream. In response, he ran to the front yard, where he saw his wife and Anet America "locked up together" on the ground, with Ms. America holding his wife by her hair. As he was attempting to separate the women, Wade and Randy Pruitt ran up and began kicking, stomping, and beating his wife while she was still on the ground. Mr. Shelton testified he was hit three times as well, at least once each by Wade and Randy Pruitt. He said his wife was beaten unconscious and transported by ambulance to the hospital, and he received bruises to both sides of the face and two black eyes, and went directly to the emergency room after taking out a warrant against the Pruitts.

Mr. Shelton testified his daughter, Kimberly, who was in the pool when the fight broke out, came to the front in response to Mrs. Shelton's screams, and his daughter's friend, Tina Hensley, was present as well. He identified the videotape recorded by his home's surveillance camera at the time of the fight, subsequently admitted as an exhibit, which contains a view of the fence between the properties, part of the street in front of the Sheltons' house, and a portion of the Sheltons' driveway and front yard, but does not show the actual fight. After the videotape was played before the jury, Mr. Shelton testified the object he threw over the fence in one of the last frames was one of the potatoes that the Pruitts had earlier thrown into his yard.

On cross-examination, Mr. Shelton testified his neighbors across the street had a surveillance camera mounted on their house, but he did not think the camera had been turned on at the time and knew nothing of his daughter's having had possession of the videotape. He acknowledged the videotape admitted into evidence showed that he armed himself with a stick before returning to the

---

[1](...continued)
"Annette Merica," rather than "Anet America."

fight. However, he denied that his wife's voice could be heard after the conclusion of the fight, testifying that it was instead the voice of the "little deaf girl" from across the street.

Kimberly Shelton testified Ms. America was on top of her mother in their yard when she came around the house. She said she was attempting to pick her mother up when Mrs. Pruitt came up behind her, grabbed her around the waist, and started pulling. According to her testimony, Ms. America and Wade Pruitt continued their assault on her mother during that time, with Ms. America "wildly hitting" and Mr. Pruitt kicking and stomping her mother. Ms. Shelton testified she received a blow on the face from Ms. America and a kick on the hip from Wade Pruitt in the process, but her injuries were mild compared to the ones her parents received and she did not seek medical attention. On cross-examination, she testified she had no idea if her neighbors had a surveillance tape that showed the actual fight.

Joanne Shelton testified the altercation began when Ms. America began "mouthing" obscenities about the Sheltons' deceased daughter, and she called in response, "You come on down here, young lady. . . . . Come on down, or are you going to be like your damned old daddy and run." She testified that Ms. America, her fist fortified with steel knuckles, responded to the challenge:

> [Ms. America] come across the ditch line in on me. And she hit me. And at first I thought it was a bracelet, like I had on. And she hauled off and hit me, and it wasn't a bracelet, it was a pair of steel knucks [sic].
>
> And when she hit me, I done like this, I - - with my fist. I said, "This is for Sheila Shelton Lovell." And I did - - everyone, I'll tell you, I did, I hit her. I hit her. I was mad. They had no right. I mean, just keep your mouth shut on my daughter. That's the only way they could ever get me to correspond to even acknowledge them.

Mrs. Shelton testified that Randy Pruitt hit her and Wade Pruitt kicked her repeatedly as she lay on the ground, and identified the medical bills she incurred as a result of her injuries.

On cross-examination, Mrs. Shelton denied she had ever vandalized the Pruitts' property. She further denied she had ever had problems with any other neighbors or with the electric meter readers. She admitted, however, that her meter was now located in someone else's yard. She acknowledged the obscene words she attributed to Ms. America are not audible on the videotape, while she can be heard yelling obscenities at Ms. America and asking if she has any "taters and beans," immediately after Ms. America is heard calling for her daughter, who had ridden her bicycle down the street. Mrs. Shelton explained that Ms. America "mutter[ed]" the obscenities about her deceased daughter and that the "taters and beans" question was a reference to the mixed produce the Pruitts had earlier thrown over the fence into her yard.

Tina Hensley, who said she was not involved in the fight and was the one who called the police, testified she and Mrs. Shelton were talking in the Sheltons' driveway when she noticed Ms. America standing "in a ditch line." She said "there . . . were words exchanged," and "the next thing [she] kn[e]w" Ms. America walked over to Mrs. Shelton and the two began to fight. Although the women began the fight in the Sheltons' yard, they soon rolled out into the street, where a number of other people quickly joined in. Ms. Hensley described the chaotic scene:

> **A.** Okay. And then I was trying to separate Joanne and Anet, and I was - - Joanne was trying to stand up. And the next thing I know - - and I didn't even know anybody was there at the time except for the three of us. Randy ran and tackled Joanne as she was trying to stand up. And . . .
>
> **Q.** "Randy" being the Defendant, Randy Pruitt?
>
> **A.** Yes.
>
> **Q.** Okay.
>
> **A.** And he tackled Joanne, and she was laying on the ground again, and he rolled off of her. And then that's when I turned around and saw everybody. I mean, there was like numerous people out in the street hitting and screaming, and everybody was in everybody's face.

Bill Campbell, the Sheltons' neighbor from across the road, testified the fight began when Mrs. Shelton, who was sweeping potatoes out of her driveway, yelled at Ms. America that she had better stop her children from throwing potatoes in her yard. He said that Ms. America responded by jumping on Mrs. Shelton in her driveway and slapping her. In rapid succession, Ms. America's brother, father, and mother ran to join the fight:

> And here come Wade's boy. He come down the road running, like, out there, and knocked Joanne out in the road, beating her with his fist. And here come Wade kicking at her. And here comes mom. They all on that one woman out there, that one woman, beating her up. And I ain't - - I've been hit by him.

Mr. Campbell testified Wade Pruitt "struck [him] a lick with a pair of knucks" when he went across the street to find out what was going on. Although he described previous confrontations he had had with both Wade and Randy Pruitt and testified he had a surveillance camera directed at the Pruitts' house in an effort to catch the individuals who had been vandalizing his property, he denied he went across the street to join the fight or that he cut Wade Pruitt with his pocketknife during the melee.

Officer Tony Whitten of the Cocke County Sheriff's Department testified there were approximately thirty people in the yard when he responded to the Sheltons' residence. He said he spoke to Mr. Shelton in an effort to determine what had happened, and observed that he had a knot on his right eye and red marks on the left side of his face. However, he did not charge anyone at the scene. Officer Josh Holt of the Dandridge Police Department testified the fight was over and Mrs. Shelton, who appeared to have been beaten, was lying in the yard when he arrived. He said there were potatoes in the yard and driveway and what appeared to be beans in the swimming pool. Although he did not charge anyone at the scene, he advised those present of their rights and the procedure for obtaining a warrant from a magistrate.

Anet America testified her family had experienced ongoing problems with the Sheltons over the years. Among her claims was that the Sheltons had shot their elderly family dog, fired gunshots through her bedroom wall and her truck, repeatedly cut down the line her family had strung between the surveyor's stakes while they were in the process of building their boundary line fence, thrown food items and trash over the fence into their yard, vandalized her father's truck, and hung a chicken leg over the fence. In addition, she said that Mrs. Shelton had spray painted their yard and spat at her and called her names when she tried to mow her parents' lawn.

Ms. America testified the July 28, 2002, fight began after she went outside to call her eleven-year-old daughter, Mariah, and Mariah's cousin, Riley, home to lunch, and Mrs. Shelton began cursing her. She said she did not reply, but instead stepped out into the roadway in order to see the children, who had ridden their bicycles past the Sheltons' home. When she did so, she saw Mariah, who was crying, shake her head to indicate she was not going to return home past the Sheltons' house. Ms. America testified she was walking down the street past the Sheltons' house, with the sole intention of bringing the children safely home, when Mrs. Shelton suddenly punched her in the mouth. She insisted she was never in the Sheltons' yard, said nothing to Mrs. Shelton, and was minding her own business when attacked.

In Ms. America's account, it was she, rather than Mrs. Shelton, who ended up on the ground under attack by multiple individuals:

> I knew M[r]s. Shelton had put her fist in my mouth. But then, after that, I was on the ground not long after that. The deaf girl that Mr. Shelton was talking about was to my right, at my hands, pulling my hands and hitting me under the arm. And I know this for the fact: She had a pair of pink shorts on with a pink pair of panties on. And I pulled them off of her. I just retch up (sic) and I just pulled them off of her, just try to get her away from me.
>
> Johnny Shelton was down at my right foot, kicking and hitting and pulling my leg. M[r]s. Shelton was to the left leg pulling and hitting and coming up and down, hitting me. Just hitting me. And

-5-

their daughter was to the left, my left arm, doing the same, like they were trying to pull me to the yard.

Ms. America testified Ms. Hensley was initially involved in the fight as well, but later left. She said her brother, Randy, first came to her assistance, followed by her father and later her mother, but she was unaware of what happened between them and the Sheltons because she was concentrating on trying to get to her feet. After the fight was over, she and her family walked home and her sister took her to the emergency room for treatment of the injuries she had sustained, which included a bloody mouth, scratched elbows and knees, and marks around her neck. Her sister stopped en route to the hospital in an effort to take out warrants against the Sheltons, but was refused by the magistrate.

Ms. America acknowledged on cross-examination that she did not see who hung the chicken leg on the fence, vandalized her father's truck, shot her dog, or fired gunshots through her truck and bedroom and admitted she had not, therefore, taken out any warrants against the Sheltons based on those incidents. She denied she spoke to Mrs. Shelton before the fight and testified that the various gestures she can be seen making in the videotape occurred when she placed her hand to her ear in an attempt to get Mariah to talk to her, and when she motioned for the children to come toward her. She said she did not see her father, mother, or brother hit anyone.

Randy Pruitt's daughter, ten-year-old Riley Pruitt, testified she and Mariah refused to return home when Ms. America called them because Mrs. Shelton had been "swinging a stick" in her driveway as they rode their bicycles past her house, and they were afraid she would hit them on their return trip. When Ms. America started down the road after them, Mrs. Shelton "jumped out and hit [Ms. America] in the mouth with her fist." After that, she saw "seven people on [Ms. America] beating her." Riley testified that the fight occurred in the road. On cross-examination, she stated that she did not know whether the stick in Mrs. Shelton's hands could have been a broom.

Randy Pruitt testified he was upstairs in his parents' house changing his clothes when he heard a commotion outside and realized a fight was in process. Without stopping to put on his shoes, he ran out to find Ms. America lying on her back on the street in front of the Sheltons' house, with Mr. Shelton and the deaf girl holding her down and Mrs. Shelton "raising up and down with her fist, a-hitting her." The witness testified the crowd scattered as he ran through it, and Mr. Shelton jumped on his back. He said he turned around, hit Mr. Shelton, and then turned back to see that Mrs. Shelton had his sister by her hair. Next, his father came up and both he and the Sheltons' daughter, Kimberly, began telling Mrs. Shelton to turn Ms. America loose. "Except for some fussing," the altercation essentially ended at that point. On cross-examination, the witness acknowledged he had a prior arrest for assault.

Edith Pruitt denied she hit Kimberly Shelton or anyone else and testified the fight was over by the time she reached the scene.

## ANALYSIS

The sole issue the defendants raise on appeal is whether the evidence was sufficient to sustain their convictions for assault. When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Both defendants contend the proof at trial shows that Mrs. Shelton was the aggressor and that Ms. America acted in self-defense and Randy Pruitt in defense of Ms. America. The State responds by arguing that the jury was entitled to resolve the conflicting testimony in favor of the State and that the evidence, viewed in that light, was sufficient for it to find both defendants guilty of assault. We agree with the State.

This was a classic case involving the credibility of witnesses. Before reaching its verdicts, the jury heard the conflicting testimony about who had done what to whom in the past, who initiated the fight on July 28, where the fight began, and what occurred during the fight. It also received instructions from the trial court on self-defense and defense of third persons. However, by its guilty verdicts, the jury obviously accredited the State's witnesses over the witnesses for the defense, or

at least that portion of their testimony concerning who initiated the physical altercation and whether Anet America and Randy Pruitt were justified in their use of force against the victims. This was its prerogative as the trier of fact, and we will not disturb its findings. Proof was presented that Ms. America initiated the fight by entering the Sheltons' property and attacking Mrs. Shelton, causing bodily injury to her, and that Randy Pruitt caused bodily injury to Mr. Shelton by striking him in the face when he ran to join the fight. We, therefore, conclude that the evidence is sufficient to sustain the defendants' convictions for assault.

## CONCLUSION

After a thorough review of the record and the parties' briefs, we conclude that the evidence is sufficient to sustain the defendants' convictions. Accordingly, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE